# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAZALE ASHBY,<br><br>        Plaintiff,<br>v.<br><br>SCOTT SEMPLE, ROLLIN COOK,<br>WILLIAM MURPHY, CHARLES<br>WILLIAMS,<br>NICK RODRIGUEZ, DISTRICT<br>ADMINISTRATOR MURPHY, CHAPLAIN<br>WRIGHT, GIULIANA MUDANO, and<br>GREGORIO ROBLES.<br><br>        Defendants. | 3:19-cv-01127 (CSH)<br><br>**SEPTEMBER 26, 2019** |

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

      Plaintiff Lazale Ashby, a convicted prisoner currently incarcerated at the Northern Correctional Institution ("Northern") in Somers, Connecticut, has filed a civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against nine Connecticut Department of Correction ("DOC") officials: former Commissioner Scott Semple, Commissioner Rollin Cook, Director William Murphy, Director Charles Williams, former Warden Nick Rodriguez, District Administrator Murphy, Chaplain Wright, Warden Giuliana Mudano, and Captain Gregorio Robles (collectively, "the Defendants"). Doc. 1 (Complaint) ¶¶ 8-16. Ashby claims that the Defendants violated his Fourteenth Amendment rights to due process and equal protection of the laws, his First Amendment right to free exercise of religion, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. *Id.* ¶¶ 66-70. He seeks monetary, injunctive, and declaratory relief. *Id.* at 4, 15-17. On

August 1, 2019, Magistrate Judge William I. Garfinkel granted Ashby's motion to proceed *in forma pauperis*. Doc. 5.

The Court now reviews Ashby's Complaint to determine whether his claims may proceed under 28 U.S.C. § 1915A. For the following reasons, the Complaint is DISMISSED IN PART.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*. *See, e.g., Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Christine Asia Co. v. Ma*, No. 16-2519-CV, 2017 WL 6003340, at *1 (2d Cir. Dec. 5, 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

(internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: A *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded, *id*.

## II. FACTUAL ALLEGATIONS

Ashby describes his religion as Akemety Shefe Pohrul[2] (Kemetic). Pl.'s Ex. G (Doc. 1 at 29). On March 3, 2018, Ashby wrote a letter to Director Williams requesting approval for a religious diet, wardrobe, and accessories, but received no response. Doc. 1 ¶¶ 18-19. On March 29, he wrote to the food services kitchen supervisor requesting a vegan diet in accordance with his religious requirements. *Id.* at ¶ 20; Pl.'s Ex. A (Doc. 1 at 19). The supervisor later informed him that food services can only approve a regular diet or common fare meal plan, and that any other special diets must be approved by the medical unit or religious services department. Pl.'s Ex. A. Ashby sent a second written request to Director Williams on April 13 about his religious diet, wardrobe, and accessories, but again did not receive a response. Doc. 1 ¶¶ 22-23.

On June 4, 2018, Ashby filed a Level-1 administrative grievance regarding the lack of responses from Williams. Doc. 1 ¶ 24; Pl.'s Ex. B (Doc. 1 at 20). In the grievance, Ashby wrote a list of the items he needed to comply with his religion, including a "vegan diet, yoga mat, Daishiki, Mala Beans, Frankincense Oil," and various other wardrobe accessories. Pl.'s Ex. B. He contended that the lack of a vegan diet option in DOC facilities "forces [him] to modify his religious behavior and violate [his] religious beliefs." *Id.* Four days later, he met with Director Williams and Chaplain Wright regarding his requests. Doc. 1 ¶¶ 25-26. Williams agreed to provide Ashby with "a kemetic

---

[2] This Court was unable to find any information about Plaintiff's professed religion, Akemety Shefe Pohrul, online. The parenthetical word "Kemetic" is presumably a reference to "Kemetic Orthodoxy," a reconstruction of ancient Egyptian religion. *See* Marilyn C. Krogh & Brooke Ashley Pillifant, *Kemetic Orthodoxy: Ancient Egyptian Religion on the Internet - A Research Note*, 65 SOCIOLOGY OF RELIGION 167, 169 (2004). At this stage, the Court does not question the sincerity of Plaintiff's beliefs.

4

vegan diet and also agreed to approve [his] necessary wardrobe and accessories."[3] *Id.* ¶ 27. On July 27, Warden Rodriguez denied his Level-1 grievance based on Williams' decision to develop a plant-based diet by September 15, 2018, and because Ashby failed to request the other religious items on a proper religious order request form. *Id.* ¶ 28; Pl.'s Ex. B. Ashby filed a Level-2 appeal from Rodriguez's decision but did not receive a response. Doc. 1 ¶ 29.

On September 7, 2018, Ashby submitted a religious order request form to Chaplain Wright with instructions to deliver it to Director Williams. Doc. 1 ¶ 30. The order listed four specific concerns regarding his diet: (1) the protein requirements of the approved meal; (2) that his meals must be entirely plant-based and may not contain any sauces, gravies, or seasonings; (3) the meals may not contain any fermented foods, and any soy used must be derived from "soy sprout or actual soybean"; and (4) the food tray must be wrapped "to avoid any third party issues." Pl.'s Ex. D (Doc. 1 at p.23). Director Williams responded to Ashby's four concerns as follows:

> (1) Before any diet plan is approved a nutritionist must approve it for all these concerns.
> (2) At this time I do not know what the meals plans will be but it will be all plant based.
> (3) I am not aware of any fermented foods being part of the diet. Soy is an important source of protein so I am sure it will be used in some ways.
> (4) We do not normally wrap the food in plastic wrap. I am not sure at all what you mean by "third party issues" but I am sure you will not have any problems.

Pl.'s Ex. E (Doc. 1 at 24). Williams' response did not satisfy Ashby's concerns. Doc 1, ¶ 33.

---

[3] Ashby cites to Exhibit C, a letter written by Williams dated July 11, 2018, in support of his allegation that Williams agreed to a "kemetic vegan diet" and to approve his wardrobe items. Doc. 1 ¶ 27. The letter actually states that Williams and his staff "set a target date of September 15, 2018 to develop a plant-based diet" but says nothing about a wardrobe or other religious accessories. Pl.'s Ex. C (Doc. 1 at 22).

5

Ashby waited until October 1, 2018, but no religious diet had been approved. *Id.* ¶ 34. On November 30, Chaplain Wright informed him that a "non-animal diet" had been approved for him and that he should write to the kitchen staff at Northern. *Id.* ¶ 35. Thereafter, on January 14, 2019, Ashby wrote to the kitchen supervisor at Northern requesting that he be placed on the "non-animal diet" for religious purposes. *Id.* ¶ 36. The staff approved his request and provided him with a "non-animal diet" menu. *Id.* ¶ 37; Pl.'s Ex. F (Doc. 1 at pp. 25-28). After reviewing the menu, however, Ashby learned that the "non-animal diet" did not satisfy his religious dietary requirements. *Id.* ¶ 38.

On January 14 and 15, 2019, Ashby wrote to Director Williams explaining his concerns with the "non-animal diet" menu and again requesting a religious wardrobe and accessories from an outside vendor. Doc. 1 ¶¶ 39-40; Pl.'s Exs. G, H (Doc. 1 at 29-30). Specifically, he requested an all-black Daishiki pant suit, yoga mat/rug, four-ounce bottle of Frankincense oil, and black mud-cloth Kufi from the "African Village Market." Pl.'s Ex. G. With respect to the "non-animal diet," Ashby wrote that his religion required an organic, raw, and "kemetic" vegan diet, and that he cannot eat gravies, sauces, oils, dressings or seasonings that are listed on the "non-animal diet" menu. Pl.'s Ex. H. Ashby also complained about the orange beverage served with dinner and the egg-free dinner. *Id.*

Days later, on January 17, Ashby filed another Level-1 grievance regarding Williams' denial of his religious diet. Doc. 1 ¶ 41; Pl.'s Ex. I (Doc. 1 at 31). Ashby wrote that Williams had "agreed to develop a religious diet for [him]" and that the "non-animal diet" that had been approved for him did not satisfy his religious requirements. Pl.'s Ex. I. The next day, Ashby wrote a second letter to Williams challenging the newly instituted Dayroom Feeding Policy in the 1-West Unit at Northern. Doc. 1 ¶ 42; Pl.'s Ex. K (Doc. 1 at 33). Among other provisions, the policy stated that, aside from

three other inmates, Breton, Campbell, and Cobb, all inmates in the 1-West Unit must consume their meals in the dayroom and would not be given meal trays in their cells. Pl.'s Ex. J (Doc. 1 at 32). In his letter to Williams, Ashby contended that the policy infringed on his ability to practice his religion, which required him to eat on the floor in a "Lotus" position only at 12:00 a.m. and 12:00 p.m., say a blessing before eating, and wash his hands. Doc. 1 ¶ 42; Pl.'s Ex. K. Ashby also filed a Level-1 grievance on January 22, challenging the new policy. Doc. 1 ¶ 43; Pl.'s Ex. L (Doc. 1 at p.34).

On January 30, Ashby received a response from Williams regarding his second request for religious attire and accessories. Doc. 1, ¶ 44; Pl.'s Ex. M (Doc. 1 p.35). Williams stated that he could not locate the outside vendor that Ashby had referenced. Pl.'s Ex. M. With respect to the items requested, Williams stated the following:

> (1) The Black Dashiki Pant Suit is denied for safety and security reasons.
> (2) The yoga mat will be considered at our Religious Review Committee [("RRC")].
> (3) The Frankincense Oil is denied because it is available in Commissary now.
> (4) The Kufi is denied because only white is permitted and it is available in the Commissary.

*Id.* The items Ashby requested "are vital to the daily practice of [his] religion." Doc. 1 ¶ 45. Days later, Williams responded to Ashby's concerns about the "non-animal diet" and the Dayroom Feeding Policy. *Id.* ¶¶ 46-47; Pl.'s Exs. N, O (Doc. 1 at 36-37). Williams stated that the RRC would review his requests and complaints. Pl.'s Exs. N, O.

On March 21, 2019, Ashby received responses to his January 17 grievance regarding the "non-animal diet" and the January 22 grievance regarding the Dayroom Feeding Policy. Doc. 1 ¶¶ 49-50; Pl.'s Exs. I, Q (Doc. 1 at 31, 39). In the first response, the official stated that Ashby's March 3, 2018 and April 13, 2018 written requests to Director Williams were never received and that the

7

response to his June 2018 grievance did not authorize an inmate-specific religious diet; rather, it informed him that Williams had agreed to develop a plant-based diet for him based on their discussion. Pl.'s Ex. I. The official also stated that sauces, gravies, and the wrapping of meal trays were never discussed. *Id.* The official agreed, however, to replace the orange drink with a juice or soy milk. *Id.* With respect to the dayroom policy grievance, the official stated that the Unit Administrator had approved Ashby's request to consume his lunch meal in his cell but that he must continue to eat his dinner in the dayroom. Pl.'s Ex. Q.

Ashby filed Level-2 appeals to both decisions. Doc. 1 ¶ 51; Pl.'s Exs. R, S (Doc. 1 at 40-41). Officials rejected the grievance regarding the "non-animal diet" with the following rationale:

> Please be advised that the [DOC] does not offer a Vegan diet. A health plant based (non animal) menu option is offered for those individuals who choose to want to eat healthier than the regular menu and/or common fare. The plant based (non animal) menu is not a religious menu.

Pl.'s Ex. R. In response to the other grievance regarding the Dayroom Feeding Policy, officials agreed to permit Ashby to consume both his lunch and dinner meals in his cell to accommodate his religious needs. Pl.'s Ex. S.

On April 5, 2019, Ashby received a letter from Director William Murphy regarding his previous request for a yoga mat. Doc 1 ¶ 53; Pl.'s Ex. T (Doc. 1 at 42). Murphy stated that the RRC considered his request and "needs to know the size and color(s) of the mat and what material(s) it is made of." Pl.'s Ex. T. Ashby responded to the request.[4] Doc. 1 ¶ 54.

---

[4] Ashby cites to "Exhibit U" as his response to Murphy's letter, but there appears to be no such exhibit attached to the complaint, nor does any other Exhibit appear to provide his response. Doc. 1 ¶ 54.

On July 18, 2019, Captain Robles informed Ashby that he was no longer permitted to consume meals in his cell per Warden Mudano's order. Doc. 1 ¶ 56. Robles also told Ashby that Warden Mudano believed eating in the cell to be "a safety and security issue." *Id.* at ¶ 57. Ashby told Robles that there have not been any security issues related to his in-cell meals and that two other inmates, Cobb and Campbell, were still permitted to eat in their cells for mental health reasons. *Id.* ¶¶ 58-59. Ashby further argued that Campbell often leaves his cell for recreation, work, and to associate with other inmates but is still permitted to eat in his cell, which leads Ashby to believe that he is using his mental health problems to circumvent the Dayroom Feeding Policy. *Id.* ¶¶ 60-61. In response, Robles told Ashby to "develop some mental health issues or file a suit." *Id.* ¶ 62.

Later that day, Ashby wrote to the mental health unit and the medical unit informing officials therein that he would not be exiting his cell to eat "under duress and, therefore, would be denied food." Doc. 1 ¶ 63. Starting July 19, 2019, Ashby began refusing all food trays because he refused to eat his meals outside of his cell due to his religious beliefs. *Id.* ¶ 64. His unit counselor later informed him that his status had changed and that he had to exit his cell to eat or he would not be fed. *Id.* ¶ 65.

### III. ANALYSIS

Ashby claims that Semple, Cook, Williams, William Murphy, District Administrator Murphy, Wright, and Robles violated his Fourteenth Amendment right to due process "by unjustly forcing [him] to eat out[side] his cell or not be fed" and that William Murphy, Williams, and Wright violated his right to due process "by denying [him] approval to purchase [a] wardrobe and accessories for his religion from a[n] outside vendor." Doc. 1 ¶¶ 66-67. He further claims that all Defendants violated his Fourteenth Amendment right to equal protection of the laws by providing

9

inmates of other faiths the opportunity to order their religious wardrobes, books, and accessories but denying him the same. *Id.* ¶ 68. Finally, Ashby claims that all Defendants violated his First Amendment right to freely exercise his religion and RLUIPA by denying him a proper religious diet, wardrobe, and accessories. *Id.* ¶¶ 69-70.[5]

### A. Claims Against Semple, Cook, and District Administrator Murphy

Despite listing them as Defendants to this action, Ashby does not allege any facts against Semple, Cook, or District Administrator Murphy. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). To the extent Ashby seeks damages from these defendants based on their supervisory roles at Northern or in the DOC, he must allege facts showing that (1) the official directly participated in the constitutional deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred;

---

[5] The Court takes judicial notice that Ashby filed a previous § 1983 action in this Court on February 15, 2013 based on very similar claims. *See Ashby v. Arnone*, No. 3:13-CV-00223 (SRU), 2013 WL 17988905 (D. Conn. Apr. 26, 2013). In *Arnone*, Ashby claimed *inter alia* that the defendants violated his First Amendment right to freely exercise his religion, his Fourteenth Amendment right to equal protection of the laws, and RLUIPA by denying him access to a proper religious wardrobe and materials and a diet that conforms to his religious requirements. *Id.* at *1. That case was dismissed on August 20, 2014 pursuant to a stipulation between the parties. *See Arnone*, No. 3:13-CV-00223 (SRU), Doc. 43. Because that case concerned events that occurred on separate dates, nearly seven years ago, and involved different individual defendants, this Court has no reason to conclude that the instant action is barred by *res judicata*, collateral estoppel, or on any other jurisdictional grounds at this time. If the Defendants believe that the instant action is barred based on the previous case, they may so argue in a motion to dismiss.

(4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). The fact that these Defendants occupy supervisory positions is, standing alone, insufficient to establish their personal involvement in the constitutional deprivations. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Because Ashby has not alleged any facts against these Defendants, the claims against them are dismissed.

### B. Free Exercise of Religion

The First Amendment guarantees the right to the free exercise of religion. The Free Exercise Clause of the First Amendment requires that government officials respect and not interfere with the religious beliefs and practices of the people. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (internal citation omitted). However, an inmate's First Amendment right to the free exercise of religion is not absolute: "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Thus, in this context, the constitutionality of a challenged prison rule is judged under the reasonableness test; a challenged government action "passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quotation marks and citation omitted).

To state a Free Exercise Clause claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274–75. Specifically, he must allege facts showing that he sincerely holds a particular belief, that the belief is religious in nature, and that the challenged action substantially burdened his exercise of that belief. *Ford v. McGinnis*, 352 F.3d 582, 588-91 (2d Cir. 2003). If the inmate states a plausible free exercise claim, the burden shifts to the defendants to show that the challenged conduct is reasonably related to legitimate penological interests; "the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quotation marks and citation omitted).

Construing his allegations liberally, the Court will permit Ashby's free exercise claim to proceed against Williams, Wright, Robles, and Mudano for denying him meals, a wardrobe, and accessories that conform to his religious requirements and forcing him to consume his meals in the dayroom as opposed to inside his cell. Although Ashby acknowledges that the stated reason for some of these decisions was safety and security, he plausibly alleges that his beliefs were sincere and religious in nature, and that the restrictions substantially burdened those religious beliefs. The Court will therefore permit the free exercise claim to proceed against these Defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

Ashby has not, however, alleged sufficient facts to state a plausible free exercise claim against Rodriguez or William Murphy. The only allegation against Rodriguez is that he denied Ashby's first Level-1 grievance, which was based on Williams' failure to respond to the requests regarding the religious diet, wardrobe, and accessories, because Williams had already approved a vegan diet for Ashby, and Ashby failed to properly submit a religious order request form for the

other items. *See* Doc. 1 ¶ 28; Pl.'s Ex. B. This allegation, alone, is insufficient to show that Rodriguez substantially burdened Ashby's religious beliefs or that he was even involved in the decisions regarding his meals, clothing, and accessories. *See Jusino v. Mark Frayne*, No. 3:16-CV-00961 (MPS), 2016 WL 4099036, at *5 (D. Conn. Aug. 2, 2016) (denial of grievance alone does not establish personal involvement of supervisory official). As for William Murphy, there are no allegations showing his involvement in denying Ashby religious food or accessories. Ashby merely alleges that Murphy inquired about the size, color(s), and material(s) of the yoga mat he requested. Doc. 1 ¶ 53; Pl.'s Ex. T. Therefore, the free exercise claim is dismissed as to Rodriguez and William Murphy.

### C. RLUIPA

Ashby next claims that the Defendants violated his rights under RLUIPA by denying him food, clothing, and accessories that conform to his religion and the ability to eat his meals in his cell. *See* Doc. 1 ¶ 69. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Congress enacted RLUIPA to provide greater protection for religious exercise than the Free Exercise Clause of the First Amendment makes available. *Holt v. Hobbs*, 135 S. Ct. 853, 859-60 (2015). However, a plaintiff's remedies under RLUIPA are limited: RLUIPA does not create a private right of action against state officials in their individual capacities, nor does it authorize recovery of damages against state officials in either an individual or official capacity. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citations omitted). The plaintiff may only obtain injunctive and/or declaratory relief as a remedy

13

for a RLUIPA vioaltion. *See Pilgrim v. Artus*, No. 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *16 (N.D.N.Y. Mar. 18, 2010) (limiting prisoner's RLUIPA claims against state correction officers for injunctive and declaratory relief).

At this time, the Court will permit Ashby's RLUIPA claim to proceed against Williams, Wright, Robles, and Mudano based on the same allegations giving rise to his free exercise claim. The claim may proceed against these Defendants in their official capacities for injunctive and declaratory relief. *See, e.g.*, *Michalski v. Semple*, No. 3:16-cv-2039(VLB), 2017 WL 4475994, at *8 (D. Conn. Oct. 6, 2017) (permitting RLUIPA claim to proceed based on same allegations as First Amendment free exercise claim). Additionally, for the same reasons the Court dismisses Ashby's Free Exercise claims against Rodriguez and William Murphy, it dismisses Ashby's RLUIPA claims with respect to those Defendants.

### D. Fourteenth Amendment Due Process

Ashby next claims that the defendants violated his Fourteenth Amendment right to due process by "unjustly forcing [him] to eat out of his cell or not be fed" and "denying [him] approval to purchase [a religious] wardrobe and accessories." Doc. 1 ¶¶ 66-67. "Substantive due process protects individuals against government action that is arbitrary . . . conscience-shocking . . . or oppressive in a constitutional sense . . . but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted). "Constitutional violations do not, in and of themselves, 'shock the conscience' for the purposes of substantive due process." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 409 (D. Conn. Mar. 1, 2016) (quoting *Roman v. Velleca*, No. 3:11-CV-01867 (VLB), 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012)).

This Court has already permitted Ashby's First Amendment free exercise claim and RLUIPA claim to proceed against Williams, Wright, Robles, and Mudano based on the denial of Ashby's religious meal accommodations, wardrobe, and accessories. Any substantive due process claim based on the same facts would be duplicative, and therefore, unwarranted. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim[]'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, Ashby's due process claims are dismissed.

### E. Fourteenth Amendment Equal Protection

Finally, Ashby claims that the defendants violated his Fourteenth Amendment right to equal protection of the laws by granting inmates of other faiths (*i.e.*, Christianity, Judaism, Islam, Native American) the ability to purchase their religious wardrobes, books, and accessories from outside vendors but denying him the same. Doc. 1 ¶ 68. The Court will allow this claim to proceed at this time.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)); *see*

*also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977) (stating that where there is an alleged violation of the Equal Protection Clause, "the courts should allow the prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused").

Construing his allegations liberally, the Court will permit Ashby's equal protection claim to proceed against the same four Defendants, Williams, Wright, Robles, and Mudano, based on their denial of Ashby's religious wardrobe and accessories. The claim may proceed against these Defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

### IV. CONCLUSION AND ORDERS

(1) For the reasons stated herein, the Fourteenth Amendment due process claims are DISMISSED. All claims against Semple, Cook, William Murphy, District Administrator Murphy, and Rodriguez are also DISMISSED. To the extent Ashby can remedy the factual deficiencies of these claims, he may file an amended complaint within twenty-one (21) days of the date of this Order. If no amended complaint is filed within twenty-one (21) days of the date of this Order, those claims will be dismissed with prejudice.

(2) The Complaint may proceed on the First Amendment free exercise claim and the Fourteenth Amendment equal protection claim against Williams, Wright, Robles, and Mudano in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. The RLUIPA claim may also proceed against those same defendants in their official capacities for declaratory and injunctive relief.

(3) The Clerk shall prepare a summons form and send an official capacity service

packet, including the Complaint, Doc. 1, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on the Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and file a return of service within thirty (30) days from the date of this Order.

(4) The clerk shall verify the current work address for Williams, Wright, Robles, and Mudano with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at the confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver requests on the thirty-fifth (35th) day after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) The clerk shall mail a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(6) Williams, Wright, Robles, and Mudano shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery

Disclosures," which will be sent to the parties by the Court. The Order can also be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Ashby changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Ashby must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

**It is SO ORDERED.**

Dated: September 26, 2019
New Haven, Connecticut

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge